UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN RAMIREZ, an individual, and ESTELA TIJERINA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware Limited Liability Company,<br><br>Defendant. | No. 1:25-cv-01605-KES-SAB<br><br>ORDER DENYING MOTION TO REMAND<br><br>Doc. 8 |

Plaintiffs Juan Ramirez and Estela Tijerina ("plaintiffs") filed this case in Kings County Superior Court alleging that defendant General Motors LLC ("GM") violated multiple provisions of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790, et al. GM removed the action to this court based on diversity jurisdiction. Doc. 1. Plaintiffs moved to remand. Doc. 8.

For the reasons set forth below, plaintiffs' motion to remand is denied.

## I. BACKGROUND

On September 15, 2025, plaintiffs filed this "lemon law" action against GM in Kings County Superior Court. Doc. 1-1. Plaintiffs allege that their 2022 GMC Acadia exhibited numerous defects, and that when they presented the vehicle to GM for repairs, GM failed to adequately repair the vehicle, replace it, or provide a refund. *See* Doc. 1-1 at ¶¶ 6-17. Plaintiffs

assert causes of action against GM for breach of express and implied warranties and violation of the Song-Beverly Act's requirement for timely repairs. *See* Doc. 1-1. The complaint seeks plaintiffs' actual damages, civil penalties in the amount of two times plaintiffs' actual damages, reasonable attorneys' fees, and other damages. *Id.* at 10.

GM removed the case to this court on November 20, 2025, alleging that removal was timely and that this court had diversity jurisdiction. Doc. 1. In its notice of removal, GM asserts that this Court has subject matter jurisdiction because the amount in controversy exceeds $75,000 and the parties are completely diverse. *Id.* at 3–6. Plaintiffs do not dispute GM's assertion that plaintiffs are citizens of California and that GM is a citizen of Michigan and Delaware. *See* Doc. 1 at 3–4; Doc. 8. GM asserts that, though the amount in controversy and diversity of citizenship were not apparent on the face of the complaint, GM ascertained that the parties were diverse and that the amount in controversy was satisfied after it conducted a preliminary investigation, which it concluded within thirty days prior to removal. *See* Doc. 1 at 2.

Plaintiffs motion to remand this case to state court argues that GM's notice of removal was untimely under 28 U.S.C. § 1446(b)(1) and that GM failed to plausibly allege that the amount in controversy was met. Doc. 8 at 2. GM filed an opposition, *see* Doc. 9, and plaintiffs filed a reply, *see* Doc. 12.

## II. LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or when there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a).

To remove a case to federal court, the defendant must timely file a notice of removal. 28 U.S.C. § 1446(a)–(c); *see Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). A notice of removal is timely if: (1) it is filed within thirty days of receipt of the complaint, 28 U.S.C. § 1446(b)(1), (2) "the case stated by the initial pleading is not removable," and the notice of removal is filed within thirty days of the defendant's receipt of "a copy of an

amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(3), or (3) a defendant does not run afoul of either of these thirty-day deadlines and removes "on the basis of its own information" within one year of the action's commencement. *See Roth*, 720 F.3d at 1125; *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692–93, 695 (9th Cir. 2005); 28 U.S.C. § 1446(c)(1).

## III. DISCUSSION

Plaintiffs' motion to remand takes two contradictory positions: First, they assert that GM failed to timely remove under 28 U.S.C. § 1446(b)(1) because it is clear from the face of the complaint that the amount of controversy is greater than $75,000 and that the parties are diverse. Doc. 8 at 4–8. Second, they argue that GM has not met its burden to show that the amount in controversy is greater than $75,000. Doc. 8 at 8–10. Plaintiffs' motion fails on both grounds.

### A. Timeliness of Removal

Plaintiffs first argue that GM's removal was untimely under § 1446(b)(1) because it is clear from the complaint alone that the jurisdictional requirements are met. Doc. 8 at 10. As to diversity of citizenship, plaintiffs are incorrect. The complaint states: "Plaintiff[s] [are], and at all times relevant herein [were], *residents* of Riverdale, California." Doc. 1-1 at ¶ 2 (emphasis added). A person's citizenship is determined by their state of domicile, not their state of residence. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). Stating a plaintiff's residence in a complaint is insufficient, by itself, to trigger the thirty-day removal period. *See Harris*, 425 F.3d at 695–96. As diversity of citizenship is not ascertainable from the complaint, GM was not obligated to remove within the 30-day period under 28 U.S.C. § 1446(b)(1). And plaintiffs do not argue that some additional pleading or document beyond the complaint rendered their citizenship ascertainable by defendants more than thirty days prior to GM's filing of its notice of removal. The Court therefore need not address whether the amount in controversy was ascertainable from the complaint or other pleadings or documents.

GM timely removed this action. GM did not "run afoul" of the first two pathways because the "four corners" of the complaint and other papers did not sufficiently establish diversity of citizenship and the amount in controversy. *See Harris*, 425 F.3d at 694. GM timely

filed its notice of removal on November 20, 2025, after completing its investigation within the 30 days prior to the filing of that notice and determining that the parties were diverse and that the amount in controversy was satisfied. *See Roth*, 720 F.3d at 1125; *see* Doc. 1 at 2; Doc. 8 at 7.[1]

**B. <u>Amount in Controversy</u>**

Once a plaintiff challenges the allegations for removal jurisdiction, the defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014). To calculate the amount in controversy, the Court must measure the total amount in dispute. *See e.g., Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) (noting that the amount in controversy includes "all relief a court may grant on that complaint if the plaintiff is victorious"); *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (noting that the amount in controversy is "not a prospective assessment of defendant's liability"). "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

As plaintiffs seek rescission of the contract and restitution of all consideration expended for the purchase of the vehicle, as well as civil penalties up to two times the amount of actual damages, attorneys' fees, and other relief, the amount in controversy is met, as addressed below.

**1. Actual Damages**

The Court agrees with other courts which have found that actual damages are calculated by identifying the total cash price stated on the Retail Installment Sales Contract, adding any interest paid, subtracting the "mileage offset" (which is the "amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle . . . for correction of the problem that gave rise to the nonconformity," Cal. Civ. Code § 1793.2(d)(2)(B)–(C)), and subtracting any "third-party offsets" (which consist of "optional equipment, service contracts, or GAP financing purchased by the plaintiff during the motor vehicle purchase or lease transaction from third

[1] The removal also occurred within one year of the commencement of this action. *See* Doc. 1 at 2; 28 U.S.C. § 1446(c)(1).

parties," Cal. Civ. Proc. Code § 871.27). *See, e.g., Alvarado v. FCA US, LLC*, No. 5:17-cv-505-JGB, 2017 WL 2495495, at *4 (C.D. Cal. Jun. 8, 2017); *Gerber v. FCA US LLC*, No. 17-cv-0518-AJB-BGS, 2017 WL 2705428, at *2 (S.D. Cal. Jun. 23, 2017); *Luna v. FCA US LLC*, No. 4:21-cv-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021).

The Retail Installment Sales Contract lists the total cash price as $62,056.98. Doc. 9-2 at 2. As the parties provide no information about how much interest has been paid, the court declines to factor this into the analysis. The mileage offset is $11,547.25.[2] And GM identified $1,500 in third-party offsets. Doc. 9 at 24. Therefore, the potential actual damages are $49,009.73.

**2. Civil Penalties**

California law authorizes civil penalties of up to two times the actual damages for those who willfully violate the Song-Beverly Act. Cal. Civ. Code § 1794(c). Plaintiffs argue that the Court should not include civil penalties in calculating the amount in controversy unless GM provides evidence that it willfully violated the Song-Beverly Act. *See* Doc. 12 at 9. But it would be unreasonable to require GM to prove such an allegation against itself. *See, e.g., Rahman v. FCA US LLC*, No. 2:21-cv-02584-SB (JCx), 2021 WL 2285102 at *2 (C.D. Cal. June 4, 2021) (rejecting argument that the calculation of amount in controversy should not include civil penalties just because the "[d]efendant has offered no evidence that [plaintiff] is entitled to the maximum penalty 'or, indeed, any penalties at all,'" and stating that "[d]efendant is not required to prove the case against itself"); *Brooks v. Ford Motor Co.*, No. 5:20-cv-00302-DSF (KKx), 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants . . . will deny that [they] willfully failed to comply . . . ."). The Court will

---

[2] The mileage offset is calculated by "subtracting mileage at purchase from the mileage at first repair for an alleged defect, dividing that amount by 120,000, and multiplying that sum by the purchase price." *Guzetta v. Ford Motor Co.*, No. 2:21-cv-9151-MEMF-PVC, 2022 WL 1044173, at *4 (C.D. Cal. Apr. 5, 2022); *see also* Cal. Civ. Code § 1793.2(d)(2)(C). Plaintiffs purchased the vehicle with 15 miles on the odometer, and when they took the vehicle for an infotainment system repair on January 5, 2023, the odometer read 22,344 miles. *See* Doc. 9 at 21; Doc. 9-2. Therefore, the mileage offset is: (22,344 - 15)/120,000 x $62,056.98 = $11,547.25.

therefore include civil penalties in the damages calculation.

The actual damages of $49,009.73 and maximum civil penalties of $98,019.46 total $147,029.19, exceeding $75,000 and satisfying the jurisdictional requirement. Any other relief plaintiffs may receive under the Song-Beverly Act, such as attorneys' fees, would further support the court's conclusion that the amount in controversy is met.

**IV. CONCLUSION**

For the reasons set forth above, the court finds that GM timely filed its notice of removal, Doc. 1, and has shown by a preponderance of the evidence that the parties are of diverse citizenship and that the amount in controversy exceeds $75,000. Plaintiffs' motion to remand, Doc. 8, is therefore denied.

IT IS SO ORDERED.

Dated: September 4, 2026

UNITED STATES DISTRICT JUDGE